REVISED, June 24, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 96-31049**

---

**KENNETH WAYNE MAGOUIRK,**

Petitioner - Appellant,

**VERSUS**

**MICHAEL PHILLIPS, Warden Winn Correctional Center; and
RICHARD P. IEYOUB, Attorney General, State of Louisiana,**

Respondents - Appellees.

---

Appeal from the United States District Court
For the Western District of Louisiana

---

June 18, 1998

Before WISDOM, SMITH and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Kenneth Wayne Magouirk appeals from the district court's order dismissing his 28 U.S.C. § 2254 petition for habeas corpus relief. Magouirk raised five claims for federal review. The district court, acting on the recommendation of a Magistrate Judge who raised Magouirk's procedural default of three claims sua sponte, applied Magouirk's default to bar federal litigation of those three claims. Magouirk maintains that the Magistrate Judge and the federal district court were without authority to raise procedural default sua sponte. We hold that a federal district court has

discretion to raise and apply a habeas petitioner's procedural default sua sponte. We therefore affirm the district court's holding that Magouirk's procedural default barred federal litigation of three of his five claims.

Magouirk also appeals the district court's determination that he is not entitled to relief with respect to his two remaining claims. Finding no basis for meaningful review of Magouirk's remaining claims in the record, we vacate the district court's dismissal of those claims and remand to the district court with instructions to supplement the record, and if necessary, to conduct an evidentiary hearing on the merits of Magouirk's two remaining claims. Accordingly, the judgment is affirmed in part, reversed in part, and remanded with instructions for further proceedings.

**BACKGROUND**

I.
Introduction

Louisiana convicted Magouirk of manslaughter for the death of Katherine Thomas in 1987. Thomas was abducted from her mobile home, killed and thrown into the Ouachita River. *See generally* **State v. Magouirk**, 539 So. 2d 50, 52-54 (La. Ct. App. 1989) (describing offense), *writ denied*, 566 So. 2d 983 (La. 1990). Police attention was drawn to Magouirk after they received a tip that Magouirk had a fetish for women's underwear, and that Magouirk had some of Thomas' underwear in his possession. **Id**. at 53. Near

2

the spot of Magouirk's arrest, police found a bag of women's clothing, which included items belonging to Thomas and at least two other women, Karen Cloyd and Kaye Rothwell. *Id*. at 54, 59-60.

## II.
## "Other Crimes" Evidence

Prior to trial, the state provided notice that it wanted to introduce evidence relating to five other burglaries in which women's underwear was stolen. Specifically, the state wanted to use evidence of an earlier burglary from Thomas, and similar burglaries from four other women. *See id*. at 58. The trial court excluded evidence of the prior Thomas burglary, and two other burglaries, but allowed evidence relating to burglaries of Karen Cloyd and Kaye Rothwell. *Id*. Evidence from the Cloyd and Rothwell burglaries was allowed because Cloyd's clothing and Rothwell's clothing were found in the bag with Thomas' clothing. *Id*. at 58-60. Thus, evidence relating to the Cloyd and Rothwell burglaries was demonstrably related to the Thomas homicide, and tended to establish that Thomas was killed in the course of one of Magouirk's signature burglaries. *Id*.

Both Magouirk and the state challenged the trial court's evidentiary ruling, seeking discretionary writs for interlocutory review. *Id*. at 58 n.1. Those writs were denied by both the Louisiana Court of Appeal and the Louisiana Supreme Court. *Id*.; *see also* ***State v. Magouirk***, 503 So. 2d 481 (La. 1987) (denying state's application for writ of certiorari); ***State v. Magouirk***, 503

So. 2d 476 (La. 1987) (denying Magouirk's application for writ of certiorari).

### III.
### Magouirk's Confession

In July 1986, about one year before trial, Magouirk allegedly confessed to his jailhouse roommate, Alfred Durbyn, that he was responsible for Thomas' murder. Durbyn reported the confession to his lawyer, who arranged for Durbyn to make a recorded statement for the Sheriff. Durbyn's statement to the Sheriff recounts Magouirk's jailhouse confession; says that Magouirk told Durbyn that Magouirk had taken Thomas from her home, forced her to perform oral sex in his truck and then "wasted her," and says that Magouirk threatened to kill him (Durbyn) if he (Durbyn) revealed Magouirk's confession. In August 1986, Magouirk filed a "Motion for Preliminary Examination for the Perpetuation of Testimony and for the Fixing of Bail." *Magouirk*, 539 So. 2d at 54; *see also* LA. CODE CRIM. P. art. 296. In September 1986, the state disclosed the content of Durbyn's recorded statement to Magouirk's defense counsel in answers to discovery. Shortly thereafter, Magouirk moved to suppress Durbyn's inculpatory statement. *Magouirk*, 539 So. 2d at 54.

In October 1986, and while Magouirk's motion to suppress Durbyn's statement was pending, the trial court held a hearing on Magouirk's motion to perpetuate testimony. *Id*. at 54. The state did not call any witnesses. Magouirk called Durbyn, who repeated the details of Magouirk's confession for the record. *Id*. After

4

eliciting the damaging testimony, Magouirk's counsel claimed surprise and requested permission to treat Durbyn as a hostile witness. *Id*. The state argued there was no surprise because the content of Durbyn's testimony had been disclosed in discovery. The trial court expressed its dismay that Magouirk was claiming surprise, and denied Magouirk's request to treat his own witness as hostile. *Id*. at 54-55.

At a subsequent hearing on Magouirk's motion to suppress Durbyn's testimony, Durbyn's lawyer testified that Durbyn's plea bargain was not affected by his testimony against Magouirk. *Id*. at 55. Magouirk's counsel again attempted to call Durbyn as a hostile witness, and that request was denied. *Id*. Magouirk's counsel then called Durbyn on direct examination, at which point Durbyn stated the details of Magouirk's confession for a third time, and Magouirk's motion to suppress Durbyn's testimony was denied. *Id*.

IV.
Durbyn's Aborted Trial Testimony

Trial was scheduled to begin on June 15, 1987. In early June, Ouachita Parish jail officials reported that Magouirk and Durbyn had crossed paths in the jail and engaged in a brief physical altercation. The assistant district attorney prosecuting Magouirk's case was informed of this attack shortly thereafter by the investigating jail officer, who also happened to be the prosecuting attorney's wife. Thereafter, and shortly before trial, the prosecuting attorney reinterviewed Durbyn about his potential trial testimony against Magouirk. Durbyn told the prosecuting

5

attorney and the district attorney's investigator about the fight with Magouirk.

Trial began as scheduled on June 15, 1987. While Durbyn was being transferred from the jail to testify, Durbyn told the district attorney's investigator that he had decided not to testify. When the state called Durbyn, Durbyn took the stand and testified that his earlier statements at the hearing to perpetuate testimony were true. *Id*. Durbyn then refused to testify further, stating that he wanted to exercise his Fifth Amendment rights. *Id*. Outside the presence of the jury, the trial court warned Durbyn that the Fifth Amendment did not justify his refusal to testify against Magouirk. *Id*. When Durbyn continued to refuse to testify, the trial court held Durbyn in contempt. *Id*.

The state moved to have Durbyn declared "unavailable," so that Durbyn's testimony at the perpetuation hearing could be introduced.[1] Magouirk objected, arguing that he had no opportunity to cross-examine Durbyn in the earlier hearing. *Id*. The trial court rejected Magouirk's argument and allowed Durbyn's recorded testimony from the preliminary hearing to be played for the jury in its entirety. *Id*. Later in the trial, Magouirk attempted to call Durbyn as a hostile witness. *Id*. The trial court refused to have

---

[1]    Louisiana law provides that testimony given at a preliminary examination is admissible for any purpose at a subsequent proceeding in the case, if (1) the court finds that the witness is unavailable, and (2) the witness' unavailability was not procured by the party offering the testimony. LA. CODE CRIM. P. art. 295(B).

Durbyn brought before the jury again. When Durbyn was examined outside the presence of the jury, he stated that he would "like to stay out of this altogether." *Id*.

Magouirk was charged with second degree murder, but the jury was also instructed on lesser included offenses. After deliberation, the jury returned a guilty verdict on the lesser included responsive verdict of manslaughter. *Id*. at 52.

V.
Magouirk's First Appeal to the Louisiana Court of Appeal

Magouirk appealed, raising a number of issues, including (1) that he was denied the opportunity to cross-examine Durbyn, in violation of his Sixth Amendment confrontation right; (2) that the trial court erroneously admitted evidence of the Cloyd and Rothwell burglaries, as well as evidence of the prior Thomas burglary that had been excluded by court order; and (3) that the evidence against him was insufficient to support his conviction. In September 1988, the Louisiana Court of Appeal issued an opinion reversing and remanding the matter for a new trial. *Id*. at 54-57. The Court of Appeal found that the admission of Durbyn's perpetuated testimony denied Magouirk his constitutional right to confront Durbyn at trial, and that the limited cross-examination afforded in the preliminary examination hearing was insufficient to satisfy his Sixth Amendment confrontation right. *Id*. The Court of Appeal rejected Magouirk's argument that the "other crimes" evidence relating to similar burglaries was improperly admitted, and

7

declined to consider, as unnecessary, his challenge to the sufficiency of the evidence. *Id*. at 58-61.

In October 1988, after the Court of Appeal entered its initial decision, the state filed a petition for rehearing, arguing that Magouirk waived his confrontation right by engaging in misconduct that caused Durbyn to be unavailable for cross-examination at trial. *See United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. Unit B 1982) ("We conclude that a defendant who causes a witness to be unavailable for trial for the purpose of preventing that witness from testifying also waives his right to confrontation."); *see also United States v. White*, 116 F.3d 903, 911 (D.C. Cir.), *cert. denied*, 118 S. Ct. 390 (1997) ("We have no hesitation in finding, in league with all circuits to have considered the matter, that a defendant who wrongfully procures the absence of a witness or potential witness may not assert confrontation rights as to that witness."). The state's petition for rehearing simply recounted facts already known to the state at trial. The state did not offer any newly discovered facts or evidence to explain its belated decision to assert Magouirk's misconduct as a waiver of Magouirk's confrontation rights.

Magouirk responded that, although all of the facts comprising Magouirk's alleged misconduct were known to the state when Durbyn was called to testify, the state had never before raised the argument that Magouirk's alleged misconduct was sufficient to waive Magouirk's Sixth Amendment right to confront Durbyn at trial. Therefore, Magouirk maintained that the state had waived its right

8

to argue that Magouirk had waived his right to confront Durbyn at trial.

On rehearing, the Louisiana Court of Appeal changed course, remanding the case to the trial court for consideration of whether (1) the state waived its right to argue that Magouirk waived his confrontation right by misconduct; and (2) whether Magouirk had in fact waived his confrontation right by misconduct. *Magouirk*, 539 So. 2d at 64-66. The Court of Appeal responded to Magouirk's waiver argument and limited the scope of proceedings on remand, however, by excluding reliance upon facts or evidence that the state either knew or should have known about at the time Durbyn refused to testify at trial. The Court of Appeal also examined the standard of proof by which the state would be forced to prove Magouirk's waiver by misconduct. After considering conflicting precedent from the federal circuits, the Court of Appeal embraced the approach employed by the Second Circuit in *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982). *Mastrangelo* permits a finding of waiver with respect to a witness' prior statements when the state proves "by a preponderance of the evidence" that the defendant's misconduct caused the witness' subsequent unavailability for cross-examination at trial. *Mastrangelo*, 693 F.2d at 273-74. The Louisiana Court of Appeal expressly rejected the more stringent "clear and convincing evidence" standard used by this Circuit to establish waiver in *United States v. Thevis*, 665 F.2d 616 (5th Cir. 1982).

## VI.
## Proceedings on Remand

On remand, the trial court received evidence to determine why Durbyn refused to testify and whether the state knew or should have known why Durbyn refused to testify before the time the state raised Magouirk's waiver by misconduct in its petition for rehearing before the Louisiana Court of Appeal. Durbyn was called to testify on remand, but he refused again and the trial court held Durbyn in contempt a second time.

On the issue of the state's waiver, the trial court received testimony from the assistant district attorney who prosecuted Magouirk's case and the district attorney's investigator. Although both of these interested witnesses knew the details of Magouirk's alleged misconduct, including the threats and the fistfight, the trial court credited their testimony that they had no reason to believe that Magouirk's misconduct could have caused Durbyn's refusal to testify until Durbyn was reinterviewed in December 1988, which was after Magouirk's trial and after the Louisiana Court of Appeal issued an opinion granting Magouirk relief. The trial court therefore concluded that the state had not waived its right to argue that Magouirk waived his confrontation right by misconduct.

On the issue of Magouirk's waiver, the trial court received the same evidence of Magouirk's misconduct that was known to the state at trial, and found by a preponderance of the evidence that Magouirk's misconduct caused Durbyn's unavailability at trial. The trial court therefore held that Magouirk had waived his right to

10

confront Durbyn at trial, and Magouirk's request for relief from his conviction was denied.

## VII.
### Magouirk's Second Appeal to the Louisiana Court of Appeal

Magouirk appealed, and the Louisiana Court of Appeal affirmed. *State v. Magouirk*, 561 So. 2d 801 (La. Ct. App.), *writ denied*, 566 So. 2d 983 (La. 1990). In addition to reviewing Magouirk's contention that the district court erred on remand, the Court of Appeal reviewed and rejected the sufficiency argument raised in Magouirk's first appeal. *See* *Magouirk*, 561 So. 2d at 807 ("every reasonable hypothesis of innocence was excluded"). Magouirk's application to the Louisiana Supreme Court for writ of certiorari, which raised the issue of the state's waiver and challenged the finding of his own waiver, was denied without opinion. *State v. Magouirk*, 566 So. 2d 983 (La. 1990).

## VIII.
### Magouirk's State Petition for Post-Conviction Relief

Magouirk next filed a petition for post-conviction relief arguing, inter alia, that (1) he was denied the opportunity to test Durbyn's testimony with cross-examination; (2) that the state waived its right to argue Magouirk waived his confrontation right; (3) that counsel was ineffective for calling Durbyn and for failing to lodge a contemporaneous objection to the "other crimes" evidence; and (4) that the evidence was insufficient to convict him. The trial court denied Magouirk's petition for post-

conviction relief without opinion.  Magouirk did not appeal the trial court's disposition.

IX.
Magouirk's Federal Habeas Action

Magouirk filed this, his first federal habeas corpus action, in October 1995. Magouirk's petition for relief raised the following claims:

(1) that Magouirk's conviction was secured in violation of the Due Process Clause because the Louisiana Court of Appeal allowed the state to introduce new evidence on appeal concerning Durbyn's refusal to testify;

(2) that Magouirk's conviction was secured in violation of the Sixth Amendment to the Constitution because the trial court made clearly erroneous findings regarding (a) the state's right to argue on remand that Magouirk waived his confrontation right and (b) Magouirk's waiver of his confrontation right, and because the trial court used the wrong standard of proof for establishing Magouirk's waiver;

(3) that Magouirk's conviction was secured in violation of the Due Process Clause because the state was allowed to introduce evidence of "other crimes";

(4) that Magouirk's conviction was secured in violation of the Due Process Clause because there was insufficient evidence to support his conviction for manslaughter; and

(5) that Magouirk's conviction was secured in violation of the Sixth Amendment right to effective assistance of counsel because counsel failed to request a limiting instruction with respect to the "other crimes" evidence.

The district court referred the matter to a Magistrate Judge, who entered a Memorandum Order requiring Magouirk to file

12

documentary proof that state remedies had been exhausted. Magouirk responded by filing copies of selected briefs filed in and decisions rendered by the Louisiana state courts. Thereafter, the Magistrate Judge entered a second Memorandum Order. That order required the state to file an answer, a brief in support of its answer, and a "certified copy of the state court record," including all documents filed on direct appeal or as part of any application for post-conviction relief, transcripts of all proceedings held in the state court, and copies of or citations to all state court decisions arising out of Magouirk's conviction.

The state never complied with this court order. Instead, the state filed a Motion to Dismiss, arguing that Magouirk had failed to exhaust his state remedies because the five listed claims were never presented to the state's highest court.

Magouirk filed a response, arguing that his claims were technically exhausted because further state relief was time barred. *See* **Coleman**, 111 S. Ct. 2546, 2555 (1986) (claims are "technically" exhausted when state relief is no longer available, without regard to whether the claims were actually exhausted by presentation to the applicable state courts). Magouirk also pointed out that the state had not made any effort to comply with the court's Memorandum Order requiring the state to file an answer and a certified record of proceedings in the state court.

Relying upon the selective state court pleadings and decisions filed by Magouirk, the Magistrate Judge filed a Report and Recommendation that Magouirk's petition for relief be denied. With

13

respect to claims 1, 3 and 5, the Magistrate Judge accepted Magouirk's argument that his claims were technically exhausted, but raised sua sponte the premise that those claims were nonetheless procedurally defaulted. With respect to claim 2, the Magistrate Judge concluded that the trial court's findings on the issue of waiver were supported by the evidence, and entitled to a presumption of correctness. The Magistrate Judge reached that conclusion without any state court record of the proceedings on remand. With respect to claim 4, the Magistrate Judge found that the evidence offered at Magouirk's trial was sufficient to support Magouirk's conviction. The Magistrate Judge reached that conclusion without any state court record of Magouirk's trial. Thus, the Magistrate Judge recommended that Magouirk's petition be denied as to all claims, and that the cause be dismissed.

Magouirk filed timely objections, challenging the Magistrate Judge's sua sponte invocation of the procedural default doctrine with respect to claims 1, 3 and 5, and his proposed disposition of claims 2 and 4 on the merits. The district court held that the Magistrate Judge had the power to raise procedural default sua sponte, citing *Graham v. Johnson*, 94 F.3d 958 (5th Cir. 1996) (permitting the exhaustion doctrine to be raised sua sponte). The district court also held that the Louisiana Court of Appeal was free to adopt the Second Circuit's "preponderance of the evidence" standard for determining Magouirk's waiver, rather than the "clear and convincing evidence" standard used by our Court in *United States v. Thevis*. In all other respects, the district court

14

adopted the Report and Recommendation issued by the Magistrate Judge, and entered judgment dismissing Magouirk's claims.

## X.
## Magouirk's Appeal to This Court

Magouirk filed a timely notice of appeal and a motion requesting a certificate of appealability (COA) from the district court, which was denied. Magouirk appealed, and this Court granted Magouirk a COA limited to two issues: (1) whether the Magistrate Judge properly raised procedural default sua sponte, and (2) whether Magouirk's objections to the Magistrate Judge's report provided an adequate opportunity for him to demonstrate cause and prejudice or a fundamental miscarriage of justice, either of which could potentially excuse his procedural default.

On appeal, Magouirk challenges the Magistrate Judge's sua sponte invocation and application of the procedural default doctrine to bar claims 1, 3 and 5. Magouirk also challenges the district court's disposition of claim 2 on the merits. Specifically, Magouirk argues (1) that the state trial court used the wrong evidentiary standard when deciding on remand that he waived his Sixth Amendment right to confront Durbyn, and (2) that the trial court's fact findings on remand were erroneous. Although Magouirk does not specifically challenge the district court's disposition of claim 4, the sufficiency claim, Magouirk does argue that his claims should not have been dismissed in the absence of a complete state record.

15

## DISCUSSION

### I.
### Scope of Review

Prior to **Lindh v. Murphy**, 117 S. Ct. 2059 (1997), and at the time Magouirk's § 2254 action became ripe for appeal, our Circuit applied the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, to habeas corpus claims that were filed before, but pending on, the April 24, 1996 effective date of AEDPA. *E.g.*, **Drinkard v. Johnson**, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 1114 (1997). Magouirk's § 2254 action was filed before, and was pending on, AEDPA's April 1996 effective date. Thus, when Magouirk sought permission to appeal, this Court considered that request under AEDPA.

AEDPA requires a habeas petitioner to obtain a certificate of appealability (COA) in order to appeal. 28 U.S.C. § 2253(c). A COA is granted when the petitioner is able to make "a substantial showing of the denial of a constitutional right." **Id**. § 2253(c)(2). When granting a COA, the court is required to specify which issues are suitable for consideration on appeal. **Id**. § 2253(c)(3). In accordance with AEDPA standards, this Court granted Magouirk's request for a COA, but limited review to the issue of whether the Magistrate Judge and the district court properly relied upon the procedural default doctrine to bar review of claims 1, 3 and 5. The Court denied review of claim 2, Magouirk's challenge to the evidentiary standard used and the fact

16

findings made with respect to waiver on remand to the state trial court.

In *Lindh*, the Supreme Court clarified that AEDPA applies only to those habeas corpus claims filed on or after AEDPA's effective date. *Lindh* thus supplanted our pre-*Lindh* precedent like *Drinkard* that applied AEDPA to cases that were pending on the effective date of the Act. In light of *Lindh*, it is now apparent that Magouirk's claims are governed by pre-AEDPA law.

Under pre-AEDPA law, a habeas corpus petitioner was required to obtain a certificate of probable cause (CPC) to appeal. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998). A CPC was granted when the petitioner was able to make "a substantial showing of the denial of a federal right." *Lucas*, 132 F.3d at 1073; *Rector v. Johnson*, 120 F.3d 551, 557 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1061 (1998). When issuing a CPC, the court was not required to specify the issues to be considered on appeal, and a request for review of all issues was sufficient to bring all of petitioner's claims before the Court for review. *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997).

Magouirk's case is not the first to fall into the gap between our Circuit's precedent applying AEDPA to cases pending in April 1996, and the Supreme Court's disposition in *Lindh*. *E.g.*, *Rector*, 120 F.3d at 557; *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.), *cert. denied,* 118 S. Ct. 576 (1997); *Tucker v. Johnson*, 115 F.3d 276, 276 (5th Cir.), *cert. denied*, 118 S. Ct. 605 (1997). Because the standards for issuing a pre-AEDPA CPC were the same as

17

those for issuing a post-AEDPA COA, we have generally allowed our grant of a post-AEDPA COA to satisfy the requirement for a pre-AEDPA CPC in these cases. *Rector*, 120 F.3d at 557 n.4; *Hallmark*, 118 F.3d at 1077; *Tucker*, 115 F.3d at 276. We have also held that, in cases in which *Lindh* compels us to "construe our previous grant of a COA as a grant of a CPC," *McBride*, 118 F.3d at 436, such a grant "on a particular issue nonetheless brings up all the issues raised in a petitioner's federal habeas petition," *id*. We therefore construe our earlier grant of a limited COA in this case to be a grant of an unlimited CPC. This Court will review not only the propriety of the district court's holding that claims 1, 3 and 5 were procedurally defaulted, but also that court's disposition of Magouirk's remaining claims on the merits. Moreover, all references to § 2254 in this opinion are limited to the substance of that provision as it existed prior to the amendment of that section by AEDPA.

## II.
## Federal Court Authority To Raise Procedural Default

A.  The District Court's Authority

Magouirk argues that the Magistrate Judge lacked authority to raise the procedural default defense sua sponte because procedural default (1) is not a jurisdictional defect, and (2) is an affirmative defense that must be specifically pleaded and can be waived.

Magouirk is correct that, in the habeas context, the existence of a procedural default does not destroy the jurisdiction of the

18

federal court.  *Trest v. Cain*, 118 S. Ct. 478, 480 (1997) (procedural default "is not a jurisdictional matter").  Magouirk is also correct that procedural default is an affirmative defense that may be waived if the state fails to raise the defense in its pleadings.  *E.g.*, *Cupit v. Whitely*, 28 F.3d 532, 535-36 (5th Cir. 1994); *Mayo v. Lynaugh*, 893 F.2d 683, 686 (5th Cir. 1990).  But those axioms do not require the conclusion that a federal court may not notice a procedural default on its own motion.

Consider, for example, the analogous doctrine requiring that a habeas corpus petitioner exhaust state remedies.  Failure to exhaust is not a jurisdictional defect.  *Granberry v. Greer*, 107 S. Ct. 1671, 1673-74 (1987); *Graham v. Johnson*, 94 F.3d 958, 970 (5th Cir. 1996).  Failure to exhaust is an affirmative defense that may be waived by the state's failure to rely upon the doctrine. *Granberry*, 107 S. Ct. at 1674.  And yet there is no doubt that a federal court may raise sua sponte a petitioner's failure to exhaust state law remedies and apply that doctrine to bar federal litigation of petitioner's claims until exhaustion is complete. *Id*. at 1674-75; *Graham*, 94 F.3d at 969-70.  Similarly, the Court may refuse to honor the state's waiver of an exhaustion defense, when comity or judicial efficiency make it appropriate for the Court to insist upon complete exhaustion.  *Granberry*, 107 S. Ct. at 1674; *Graham*, 94 F.3d at 970.

The Supreme Court has held that the comity and federalism concerns that underlie the exhaustion requirement are equally applicable when claims have been procedurally defaulted.  *See*

19

*Coleman*, 111 S. Ct. at 2554-55. Some of our sister circuits have expressly relied upon the similarity between exhaustion and procedural default to hold that a federal court may exercise its discretion to raise procedural default sua sponte. *E.g.*, *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993); *Hardiman v. Reynolds*, 971 F.2d 500, 504 (10th Cir. 1992); *Hull v. Freeman*, 932 F.2d 159, 164 (3d Cir. 1991), *overruled on other grounds*, *Caswell v. Ryan*, 953 F.2d 853 (3d Cir. 1992); *Burgin v. Broglin*, 900 F.2d 990, 997-98 (7th Cir. 1990). Likewise, the district court in this case relied upon our precedent in *Graham v. Johnson*, 94 F.3d 958, 970 (5th Cir. 1996), which permits sua sponte invocation of the exhaustion doctrine, as authority for the proposition that procedural default may also be raised sua sponte.

Not surprisingly, Magouirk argues that there are important differences between the exhaustion and procedural default doctrines that require a holding that procedural default may not be raised sua sponte. Magouirk points out that dismissal for failure to exhaust state remedies merely delays federal litigation of the petitioner's claim until the state court has the opportunity to address petitioner's claims, while dismissal on the basis of procedural default operates to preclude further litigation of petitioner's claims in both the state and federal court. *See Smith v. Horn*, 120 F.3d 400, 408-09 (3d Cir. 1997) (distinguishing between sua sponte invocation of nonexhaustion and procedural default), *cert. denied*, 118 S. Ct. 1037 (1998). Similarly, Magouirk argues that comity and federalism interests may be

20

implicated to a greater degree when a federal court intervenes before state remedies are exhausted than when further state remedies are unavailable because defaulted.

We view these differences as a matter of degree rather than substance. *See Coleman*, 111 S. Ct. at 2555 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.") Moreover, whatever force these differences may eventually exert on a particular district court's exercise of its discretion to raise procedural default doctrine sua sponte, they are without any weight in this case. Magouirk's claims are "technically" exhausted because, and only because, he allowed his state law remedies to lapse without presenting his claims to the state courts. In such a case, there is no substantial difference between nonexhaustion and procedural default. *Id*. Given the similarity of these doctrines, particularly in this case, we see no reason to adopt a rule that is inconsistent with our holding in *Graham*.

The First, Second, Third, Seventh, Ninth, Tenth and Eleventh Circuits have all recognized that a federal court may, in the exercise of its judicial discretion, raise procedural default sua sponte in a habeas case.[2] Indeed, although the Circuits vary with

---

[2] *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 118 S. Ct. 1172 (1998); *Esslinger v. Davis*, 44 F.3d 1515, 1523-29 (11th Cir. 1995); *Steele v. Young*, 11 F.3d 1518,

21

respect to when that discretion may be appropriately exercised, none of the federal Circuits has taken a contrary position.

This Court has never definitively addressed whether a federal district court may raise procedural default sua sponte, although some of our cases seem to implicitly recognize that such a power exists. *E.g.*, **Mayo v. Lynaugh**, 893 F.2d 683, 686 (5th Cir. 1990) ("although it may be permissible to allow a district court at any opportunity to evaluate the alleged procedural default, the same flexibility cannot be posited to allow raising a procedural default defense at any juncture in the proceedings"); **Wiggins v. Procunier**, 753 F.2d 1318, 1321 (5th Cir. 1985) (reviewing procedural default issue notwithstanding state's waiver because "the district court addressed the issue of procedural default"); *see also* **Narvaiz v. Johnson**, 134 F.2d 688, 692-93 (5th Cir. 1998); **Goodwin v. Johnson**, 132 F.2d 162, 178 (5th Cir. 1998) (relying upon **Trest**, 118 S. Ct. 478, for the proposition that the Court of Appeals is not *required* to raise procedural default sua sponte). Today, we join our sister circuits by adopting the rule that a federal district court may, in the exercise of its discretion, raise a habeas petitioner's

---

1523 (10th Cir. 1993); **Washington**, 996 F.2d at 1447; **Hardiman**, 971 F.2d at 502-03; **Harmon v. Ryan**, 959 F.2d 1457, 1461 (9th Cir. 1991); **Hull**, 932 F.2d at 164 n.4; **Burgin v. Broglin**, 900 F.2d 990, 997-98 (7th Cir. 1990); *see also* **Bannister v. Delo**, 100 F.3d 610, 619 (8th Cir. 1996) (petitioner's argument that the district court improperly raised procedural default sua sponte rejected by the Court of Appeal in a petition for rehearing and by the district court on remand), *cert. denied*, 117 S. Ct. 2526 (1997). The Supreme Court recently declined to answer whether a habeas court *may* raise procedural default sua sponte, answering instead the more narrow question presented, which was whether a Court of Appeals *must* raise the doctrine of procedural default sua sponte. **Trest**, 118 S. Ct. at 480-81.

22

procedural default sua sponte and then apply that default as a bar to further litigation of petitioner's claims. Like other federal courts, we recognize that the district court's exercise of its discretion must be founded upon the very same principles of comity and judicial economy that undergird the procedural default doctrine. *See, e.g.*, **Smith**, 120 F.3d at 409; **Esslinger**, 44 F.3d 1515, 1525-28; *see also* **Granberry**, 107 S. Ct. at 1673-76. We turn now to an examination of whether the district court properly exercised its discretion in this case.

B.    The District Court's Exercise of Its Discretion

Procedural default, standing alone, does not always justify a dismissal of the habeas corpus petitioner's claims. Procedural default may be excused upon a showing of cause and prejudice or that application of the doctrine will result in a fundamental miscarriage of justice. **Coleman**, 111 S. Ct. at 2564. Several courts have constrained the district court's discretion to raise procedural default sua sponte by requiring that the court provide the habeas petitioner with (1) notice that procedural default will be an issue for consideration by the habeas court, and (2) a reasonable opportunity to respond with argument opposing application of the doctrine. *E.g.*, **Esslinger**, 44 F.3d at 1528 ("[W]e think it fundamentally unfair for a court sua sponte to invoke a procedural default without giving the petitioner an opportunity to show cause for the default."); *id.* at 1529 n.45 ("If the petitioner is to be afforded due process, he must receive

23

notice of the court's inclination to interpose the default, an opportunity to demonstrate 'cause' for the default and 'prejudice,' and, if material issues of fact are present, an opportunity to present his evidence."); **Hardiman**, 971 F.2d at 505 ("Prior to dismissing an action sua sponte, a court must give the complainant an opportunity to respond to the argument for dismissal."); *see also* **Washington**, 996 F.2d at 1444 (requiring additional briefing when procedural default raised sua sponte on appeal). We agree that when a federal district court (rather than the state) sua sponte raises procedural default, failure to provide the habeas petitioner with notice and a reasonable opportunity to present argument against dismissal may, in a given case, constitute an abuse of discretion. We do not, however, impose any per se rule requiring any particular form of notice or additional argument. *See* **Trest**, 118 S. Ct. at 481 ("We do not say that a court must always ask for further briefing when it disposes of a case on a basis not previously argued. But often, as here, that somewhat longer (and often fairer) way 'round is the shortest way home."). Whatever the precise parameters of that requirement may be, they were clearly met in this case.

Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims. Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report. Thus, Magouirk was afforded both

24

notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court.

A state's purposeful waiver may also pose an obstacle to sua sponte reliance upon a procedural default, and the nature of the state's alleged "waiver" should be given consideration by the district court. "[P]rocedural default is normally a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." *Trest*, 118 S. Ct. at 480 (internal quotations and alternations omitted). Notwithstanding that obligation, there are situations in which the state fails, "whether inadvertently or otherwise," to raise a meritorious defense. *Granberry*, 107 S. Ct. at 1675. Where omission is the result of a purposeful or deliberate decision to forgo the defense, the district court should, in the typical case, presume that waiver to be valid. *See, e.g., Esslinger*, 44 F.3d at 1528 (finding an abuse of discretion where district court ignored state's express waiver entered after the procedural default issue was raised by the district court); *Hardiman*, 971 F.2d at 502 (noting that the rule against sua sponte consideration of waived defenses distinguishes our adversarial judicial system from an inquisitorial one). Conversely, when omission is inadvertent, federal interests may be more likely to justify "a fresh look" at the omitted defense by the habeas court. *Granberry*, 107 S. Ct. at 1675; *see also Washington*, 996 F.2d at 1448 ("This is not a case where the government consciously waived the procedural default defense knowing that it may indeed be valid."); *Henderson*, 859 F.2d at 498 (holding that

25

the court may consider procedural default when the state inadvertently omits or belatedly raises the defense, but that the court may not override a state's deliberate decision to forgo the defense).

The record in this case indicates that the state's "waiver" was an inadvertent byproduct of careless briefing. While it is true that the thrust of the state's argument in favor of its Motion to Dismiss focused upon the exhaustion requirement, it is also true that Magouirk's claims were exhausted only because he failed to present his claims to the state court before they were time barred. The state correctly argued the essential fact that Magouirk failed to timely present his claims to the state's highest court. Moreover, the state relies upon procedural default in its argument to this Court. *Cf*. **Narvaiz**, 134 F.2d at 692-93; **Goodwin**, 132 F.2d at 178 (finding no federal interest in raising procedural default sua sponte on appeal where state failed to argue the doctrine in both the district court and the court of appeals). We cannot conclude from this record that the state intentionally waived reliance upon procedural default. Thus, the circumstances of this case are not such that the Magistrate Judge and district court were bound to honor the state's inelegant presentation of the procedural default defense.

We conclude that a federal district court may, in the exercise of its judicial discretion, raise procedural default sua sponte. The court's exercise of its discretion should not be automatic, but must in every case be informed by those factors relevant to

26

balancing the federal interests in comity and judicial economy against the petitioner's substantial interest in justice. Once a federal district court elects to raise procedural default sua sponte, the court should consider whether justice requires that the habeas petitioner be afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal. Likewise, the district court should consider whether the state's failure to raise the defense is merely inadvertence or the result of a purposeful decision to forgo the defense.

Magouirk was afforded both notice and a reasonable opportunity to oppose dismissal. Likewise, there is no evidence that the state's failure to raise Magouirk's procedural default in this case was the result of a considered and deliberate decision to waive reliance upon that doctrine. For these reasons, we find no abuse of the district court's discretion to raise Magouirk's procedural default sua sponte.

## III.
## Application of the Procedural Default Doctrine

Magouirk raised five claims in his federal habeas petition. Claim 1, objecting to the state's attempt to offer new evidence in its petition for rehearing on appeal, was never presented to any state court. Magouirk made that argument for the first time in his federal habeas petition. Claim 5, alleging that trial counsel was constitutionally ineffective, was raised only in the state trial court, as part of Magouirk's state petition for post-conviction relief. Magouirk concedes that he is time-barred from seeking

further relief in the Louisiana courts.  Therefore, Magouirk's failure to present claims 1 and 5 to the proper Louisiana courts creates a procedural default for purposes of federal habeas review. *See* **Sones v. Hargett**, 61 F.3d 410, 416 (5th Cir. 1995).

Claim 3, challenging the introduction of "other crimes" evidence, was presented to the Louisiana Court of Appeal on interlocutory appeal, and again to that court as part of Magouirk's first direct appeal.  Magouirk did not, and cannot now, present this claim to the Louisiana Supreme Court.  Thus claim 3 is also procedurally defaulted.

Magouirk argues his failure to seek review of claim 3 by the Louisiana Supreme Court should be excused because the review is discretionary.  Magouirk recognizes that this Court requires claims to be presented to the state's highest court, even when the review is discretionary.  **Richardson v. Procunier**, 762 F.2d 429, 431-32 (5th Cir. 1985).  Magouirk nonetheless contends that the Court should overrule its prior decision in **Richardson** and embrace the Eighth Circuit's approach in **Dolny v. Erickson**, 32 F.3d 381, 383 (8th Cir. 1994), which does not require exhaustion of discretionary remedies.  Alternatively, Magouirk asks the Court to distinguish **Richardson** because **Richardson** examined exhaustion in Texas state courts.  Magouirk argues that discretionary review is more likely in Texas, because the Texas Court of Criminal Appeals has exclusively criminal jurisdiction while the Louisiana Supreme Court handles both civil and criminal matters.  Magouirk's argument that we should remove the state's highest court from the exhaustion loop

28

is unpersuasive. We find no reason to disagree with or attempt to distinguish this Court's binding precedent in **Richardson**. Claim 3 is procedurally defaulted.

The district court determined that Magouirk failed to demonstrate cause and prejudice or a fundamental miscarriage of justice that would excuse his default of claims 1, 3 and 5. We agree. Magouirk's objections challenge the authority of the Magistrate Judge to raise procedural default sua sponte without notice. Although he had the opportunity, Magouirk did not even attempt to explain why he failed to pursue available state remedies within the time frame allowed by state law. Magouirk has not corrected this oversight on appeal, even though this Court's COA placed Magouirk on notice that his excuse for the default would be an issue on appeal.

Claims 1, 3 and 5 are procedurally defaulted. Although Magouirk had both notice and an opportunity to present argument in the district court opposing the application of the procedural default doctrine, Magouirk made no attempt to excuse his default. Indeed, Magouirk relied upon his default to establish "technical" exhaustion. The district court's disposition of claims 1, 3 and 5 is affirmed.

## IV.
## Magouirk's Remaining Claims

Magouirk's remaining claims, claims 2 and 4, have not been procedurally defaulted. Claim 2 challenges both the state trial court's fact findings on the issue of waiver, and that court's use of the preponderance of the evidence standard to determine

29

Magouirk's waiver. Claim 2 was presented to the Louisiana Court of Appeal on direct appeal, and to the Louisiana Supreme Court in Magouirk's application for writ of certiorari. Thus, claim 2 has not been defaulted and we review the district court's disposition of claim 2 on the merits.

Magouirk first argues that the Louisiana Court of Appeal's adoption of the preponderance of the evidence standard to determine Magouirk's waiver deprived him of his Sixth Amendment right to confront Durbyn. Whether Magouirk waived his constitutional right to confront Durbyn is a federal question controlled by federal, not state, law. *Shaw v. Collins*, 5 F.3d at 132. As the district court held, and Magouirk concedes, the Louisiana state courts are not bound by Fifth Circuit precedent when making a determination of federal law.[3] *See, e.g.*, *Freeman v. Lane*, 962 F.2d 1252, 1258 & n.3 (7th Cir. 1992); *Bromley v. Crisp*, 561 F.2d 1351, 1354 (10th Cir. 1977), *Owsley v. Peyton*, 352 F.2d 804, 805 (4th Cir. 1965). The Louisiana Court of Appeal considered and rejected *United States v. Thevis*, 665 F.2d 616 (5th Cir. 1982), which requires clear and

---

[3]    Of course, the Louisiana Court of Appeal would be bound by Louisiana Supreme Court precedent on point. Magouirk argues briefly that the preponderance of the evidence standard is also inconsistent with Louisiana Supreme Court precedent, citing *State v. Jones*, 325 So. 2d 235, 239 (La. 1976), and *State v. Johnson*, 260 So. 2d 645, 650 (La. 1972). Although both of those cases discuss the confrontation right, neither *Jones* nor *Johnson* addresses the evidentiary standard required to demonstrate waiver of a criminal defendant's confrontation right by misconduct. *See Jones*, 325 So. 2d at 239 (addressing the standard required to demonstrate that a witness is unavailable to testify); *Johnson*, 260 So. 2d at 650 (involving the denial of a criminal defendant's request for a transcript of trial proceedings); *see also United States v. Mastrangelo*, 693 F.2d at 273 ("waiver by misconduct is an issue distinct from the underlying right of confrontation").

convincing evidence that a defendant has waived his confrontation right by misconduct. *Id*. at 631. Rejecting *Thevis*, the Court of Appeal adopted the Second Circuit's decision in *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982), which permits a finding of waiver on proof by a preponderance of the evidence. *Mastrangelo*, 693 F.2d at 272-73. *Mastrangelo*'s adoption of the preponderance standard was not inadvertent -- the opinion contains a lengthy discussion of the various standards, and cites our decision in *Thevis.* The Louisiana Court of Appeal was free to adopt the preponderance of the evidence standard for determining Magouirk's waiver. That Court's reliance upon *Mastrangelo* did not deprive *Magouirk* of his Sixth Amendment right to confront Durbyn.

Magouirk also renews his challenge to the trial court's fact findings on remand that (1) the state did not waive its right to rely upon Magouirk's waiver by misconduct, and (2) Magouirk waived his confrontation right by misconduct.[4] The state trial court's findings were made after a hearing on the merits and are evidenced by a written opinion analyzing both factual issues. In such circumstances, the state trial court's fact findings are typically entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(d). That presumption may be rebutted, inter alia, by a showing that the

---

[4]    Whether Magouirk waived his right to confront Durbyn is a federal question of constitutional dimension. Whether the state waived its right to raise Magouirk's waiver by failing to assert the argument at trial is a matter of state law. Although we express no view concerning the proper scope of the district court's review on remand, we encourage the district court to be mindful of the fundamental difference between these two factual determinations when considering Magouirk's claims.

fact finding procedure employed by the state court was not adequate to afford a full and fair hearing, or that the material facts were not adequately developed at the state court hearing. *Id*. § 2254(d). Moreover, state court fact findings may not be entitled to the same deference when the federal habeas record does not contain that portion of the state court record that is required to establish the sufficiency of the evidence to support the state court's fact finding. *Id*. § 2254(e).

The Magistrate Judge found that he could proceed to an examination of the merits of Magouirk's challenge to the correctness of the state trial court's fact findings because "the state court record in this case is published and the necessary portions of the record have been provided by Magouirk." The Magistrate Judge supported that assertion with citation to those provisions of § 2254 newly amended by the passage of AEDPA.

The Magistrate Judge's statement that the state court record was published is puzzling. The Magistrate Judge's assertion that the necessary portions of the state court record had been filed by Magouirk is simply incorrect. Magouirk filed only a selection of briefs filed in Louisiana courts, together with some of the published decisions resulting from his conviction. Neither the state, which had been ordered to file a state court record, nor Magouirk, filed a record of the proceedings in the state trial court. The district court adopted the Magistrate Judge's recommendation that the state trial court findings be presumed correct without elaboration.

There is no basis for meaningful review of Magouirk's challenge to the state court fact findings in the existing record. The record does not contain the pleadings filed on remand. The record does not contain a transcript of the proceedings on remand. Indeed, the only portion of the record that provides any basis for meaningful review of Magouirk's claim that the state trial court's fact findings are erroneous is the state trial court's order on remand, which simply states the very fact findings being here subjected to review. Regardless of how deferential the standard of review for state court fact findings secured in this manner, we fail to see how any review at all can be conducted when the relevant portions of the state court record on remand are not available for review. *See* ***Townsend v. Sain***, 83 S. Ct. 745, 760 (1963) ("Ordinarily such a record -- including the transcript of testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, and other pertinent documents -- is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings."); ***Baker v. Estelle***, 711 F.2d 44, 46 (5th Cir. 1983) (excusing state's failure to produce necessary record as required by court order where state record was shown to be unavailable and alternative evidence was produced).

We think a similar problem infects the district court's dismissal of claim 4, Magouirk's challenge to the sufficiency of the evidence against him. The record before the district court did not contain a state court transcript of Magouirk's trial. We are

at a loss to understand how a federal habeas court can conduct a meaningful sufficiency review without a transcript of trial. The Magistrate Judge, in the order adopted by the district court, purported to rely solely upon the rendition of the facts reported in the Louisiana Court of Appeal decision denying Magouirk's sufficiency claim on direct appeal. Once again, Magouirk may face a heavy burden on collateral review of his conviction. That does not mean, however, that we may simply rely upon the state court decision Magouirk identifies as denying his constitutional rights to support our conclusion that they were not violated. This case must be remanded so that the record can be supplemented with those portions of the state court record necessary to conduct a meaningful review.

Remand is also justified by the fact that the Magistrate Judge premised his deference to the state court fact findings upon that version of § 2254 that has been amended by AEDPA. The amended version of § 2254 places a more onerous burden on habeas petitioners who seek to rebut the presumption of correctness afforded state court fact findings. *Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1059 (1998). Thus, the Magistrate Judge's application of AEDPA to Magouirk's claims, which conformed to our precedent at the time but was subsequently shown to be incorrect by *Lindh*, may have influenced his view of the deference to be afforded the challenged fact findings and Magouirk's burden in overcoming that deference.

For the foregoing reasons, the district court's dismissal of

34

claim 2, to the extent it challenges the state trial court's fact findings on remand, and claim 4, Magouirk's challenge to the sufficiency of the evidence, will be vacated. The case will be remanded to the district court with instructions that the district court order compliance with the Magistrate Judge's earlier order requiring that the state file an answer and a certified copy of the relevant state court record. Magouirk's challenge to the correctness of the state court fact findings must then be evaluated in light of the state court record of the proceedings on remand. Similarly, Magouirk's challenge to the sufficiency of the evidence must then be evaluated in light of the state court record of Magouirk's trial. If, for whatever reason, the relevant state court records are not available, the district court must order an evidentiary hearing for the presentation of evidence relating to Magouirk's claims. The district court is reminded that, under the Supreme Court's disposition in *Lindh v. Murphy*, 117 S. Ct. 2059 (1997), Magouirk's claims are governed by pre-AEDPA law.

We express no opinion one way or the other as to whether Magouirk will ultimately be able to establish a violation of his constitutional rights. We merely hold that the record before the district court, which contained no record of the proceedings before the state trial court on remand, and no record of Magouirk's trial, did not provide a meaningful basis for review of Magouirk's claims that the trial court's fact findings on remand were clearly erroneous and that the evidence presented against him was insufficient to support his conviction.

35

## CONCLUSION

The district court's application of the procedural default doctrine to Magouirk Claims 1, 3 and 5 is without error. Magouirk defaulted claims 1, 3 and 5 and, although he was afforded the opportunity to do so, Magouirk has not established either cause and prejudice or a manifest miscarriage of justice sufficient to excuse his default. Therefore, the district court's dismissal of claims 1, 3 and 5 is AFFIRMED.

The district court's dismissal of claim 2, to the extent that it challenged the accuracy of the state trial court's findings on remand, and claim 4, challenging the sufficiency of the evidence to support Magouirk's conviction, was ordered in the absence of an adequate record. Accordingly, the district court's dismissal of these claims on the merits is VACATED, and the cause is REMANDED with instructions. On remand, the state must be ordered to comply with Magistrate Judge's Memorandum Order by submitting a complete state court record. If, for whatever reason, those records are not available, the district court must order an evidentiary hearing for the purpose of receiving evidence relevant to those claims.

The judgment of the district court is AFFIRMED in part, VACATED in part, and the cause is REMANDED with instructions for further proceedings.

36