# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30310

———————

Rashaud L. Robinson,

*Petitioner—Appellant*,

*versus*

Joseph P. Lopinto, III, *Sheriff of Jefferson Parish*,

*Respondent—Appellee*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-2191

———————————————————

Before Davis, Southwick, and Oldham, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

A state pretrial detainee scheduled for a second trial seeks a writ of *habeas corpus*. He argues that when a poll of jurors at his 2021 trial showed ten of its members would acquit on four of five counts, retrial on those counts became barred under then-existing Louisiana law. The state trial court judge instead declared a mistrial. The federal district court denied any relief.

In this appeal from the district court's judgment, several issues would need to be considered before we could answer whether there was an effective acquittal on the four counts. We do not analyze any of those because, without

No. 22-30310

doubt, there was no acquittal on one of the counts. Thus, the detainee's *custody* pending a retrial is valid. Inasmuch as the function of federal *habeas* proceedings for state prisoners is to consider whether their custody is in violation of federal law, no relief is available in this case. AFFIRMED.

## FACTUAL AND PROCEDURAL BACKGROUND

The setting for the issues in this case is the now-repealed Louisiana constitutional provision that jury verdicts in noncapital criminal trials did not have to be unanimous. The earliest constitutional provision in Louisiana for nonunanimous criminal-trial verdicts apparently was one adopted in 1898:

> Cases in which the punishment may be at hard labor shall be tried by a jury of five,[1] all of whom must concur to render a verdict; cases in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom concurring may render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict.

LA. CONST. art. 116 (1898).

Those rules were revised when a new state constitution was adopted in 1974. The new provision continued to require unanimity for verdicts in capital cases; it now required six-member juries for lesser criminal cases but allowed five members to decide on the verdict[2]; finally, it increased from nine to ten the number of jurors required for verdicts on serious felonies less than capital: "A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must

---

[1] Authority for five-member juries in Louisiana dates at least from 1880 LA. ACTS No. 35, § 4, a statute implementing LA. CONST. art. 7 (1879). Almost a century later, the Supreme Court held that the Sixth and Fourteenth Amendments required at least six jurors for criminal prosecutions. *Ballew v. Georgia*, 435 U.S. 223, 244–45 (1978).

[2] Allowing nonunanimous verdicts by six-member juries was declared unconstitutional in *Burch v. Louisiana*, 441 U.S. 130, 138 (1979).

No. 22-30310

concur to render a verdict." LA. CONST. art. I, § 17(A) (1974); *see also* LA. CODE CRIM. PROC. art. 782(A).

In 2020, the United States Supreme Court invalidated Louisiana's allowing ten members of a twelve-person jury to convict. *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). Whether *Ramos* also invalidated nonunanimous acquittals is the central merits issue presented on this appeal.[3]

In 2017, Rashaud Robinson was indicted by a Louisiana grand jury on several counts, the most serious of which was for a murder he was charged with committing in September 2016. Prior to the beginning of Robinson's post-*Ramos* trial in April 2021, both Robinson and the State moved for jury instructions regarding the necessary votes for acquittal. Robinson sought an instruction that a nonunanimous jury verdict to acquit would be valid. Instead, the court agreed with the State that jurors had to be instructed that unanimity was required to render any verdict. Robinson then filed an application for a supervisory writ with the Louisiana Fifth Circuit Court of Appeal on the jury instruction issue. The court denied the writ after concluding the Supreme Court's *Ramos* holding had invalidated all nonunanimous verdicts. *State v. Robinson*, 21-K-197 (La. App. 5 Cir. 4/28/21).[4]

---

[3] Almost two years before the United States Supreme Court's April 2020 *Ramos* opinion, the Louisiana legislature agreed to a proposed constitutional amendment that would require unanimous jury verdicts in all noncapital felony trials for offenses committed on or after January 1, 2019. 2018 La. Sess. Law Serv. Act 722 (S.B. 243) (final legislative approval May 17, 2018), amending LA. CONST. art. I, § 17(A). Voters in November 2018 approved the amendment. LA. CONST. art. I, § 17 Credits. As to Ramos himself, jurors at his 2023 retrial acquitted (unanimously). Jillian Kramer, *Man Found Not Guilty in Second Murder Trial*, TIMES-PICAYUNE | NEW ORLEANS ADVOCATE., Mar. 10, 2023, at 1B, 3B.

[4] After Robinson's trial, the Louisiana Supreme Court held, in an appeal involving a different defendant, that "*Ramos* only addressed the constitutionality of non-unanimous verdicts to convict and made no findings with respect to acquittals." *State v. Gasser*, 346 So. 3d 249 (La. 2022). The *Gasser* court left open whether verdicts of acquittal post-*Ramos* had to be unanimous for any other reason. *Id.* It may be obvious that this court would not

No. 22-30310

At Robinson's trial, the jury considered five counts: one for second degree murder, two for attempted second degree murder of two different individuals, one for conspiracy to commit second degree murder, and one for possession of a firearm by a convicted felon. Most of the state-court records were provided in paper form to the district court, but there was no transcript of the proceedings when jurors reported their deliberations to the court. We requested a transcript, and it was provided.[5]

The jury informed the trial court it had not reached a unanimous verdict and could not deliberate further. The trial court instructed jurors to continue deliberations. Later, jurors again stated that further deliberations were pointless. The trial court polled the jury and reviewed the polling slips for each count with counsel present. The poll slips were in the record provided to the district court. To be certain of what the polling slips meant, we ordered supplementation of the record with a transcript of the court's interactions with the jurors. The polling results were that on four of the counts, ten jurors favored acquittal, one would convict, and one juror refused to be polled. For Count 4, which was conspiracy to commit second degree murder, nine jurors indicated they would acquit, two would convict, and one juror did not respond. The trial court ordered a mistrial based on a hung jury.

The State informed Robinson that it would retry him, causing Robinson to file a motion to quash the indictment. He argued the trial had resulted

_____

be bound by *Gasser* in deciding the reach of *Ramos*, but we mention the less obvious principle that "the views of the federal courts of appeals do not bind [a state's] Supreme Court when it decides a federal constitutional question." *Johnson v. Williams*, 568 U.S. 289, 305 (2013). We have acknowledged that our power in this context is one of persuasion. *See Magourik v. Phillips*, 144 F.3d 348, 361 (5th Cir. 1998). Our decisions, of course, do bind the parties before us.

[5] An appellate court has authority to order supplementation of the record. FED. R. APP. P. 10(e). The transcript assured the accuracy of our understanding of the key facts.

in his acquittal by the vote of ten jurors and a retrial for the same offenses was barred by the Fifth Amendment guarantee against double jeopardy. On June 30, 2021, the court denied the motion. Defense counsel again took writs. The Louisiana intermediate appellate court denied the writ application. *State v. Robinson*, 21-K-561 (La. App. 5 Cir. 8/23/21). On August 27, 2021, the Louisiana Supreme Court denied Robinson's writ application without assigning reasons. *State v. Robinson*, 323 So. 3d 381 (La. 2021)(mem).

On November 29, 2021, Robinson filed what he labeled an emergency 28 U.S.C. § 2241 application in the United States District Court for the Eastern District of Louisiana. In that application, he asserted that he had been found "'not guilty' on all charges," but "state officials continue to unlawfully detain Mr. Robinson" in violation of his federal constitutional right against double jeopardy. Robinson did not explain that only four of the five counts at his trial were subject to his argument about acquittals, and he argued for release from detention. The defendant is Sheriff Joseph P. Lopinto, III, who is in charge of the facility in which Robinson is detained pending trial.

The magistrate judge recommended Robinson's application be dismissed, concluding that his argument was an issue of state law and not a proper subject of a federal *habeas* application. On May 5, 2022, the district court overruled Robinson's objections to the Report and Recommendation and dismissed Robinson's suit without prejudice. *Robinson v. Lopinto*, 601 F. Supp. 3d 55, 65 (E.D. La. 2022). The district court stated that should Robinson be "convicted, he may raise the unanimous verdict issue again on direct appeal." *Id.* Robinson filed a motion for a certificate of appealability, which the district court denied. He then timely filed a notice of appeal.

On December 20, 2022, this court granted a certificate of appealability, concluding that "jurists of reason could find the district court's assessment of his double jeopardy claims debatable or wrong."

No. 22-30310

## DISCUSSION

The issues before us include whether nonunanimous verdicts of acquittal were still valid when Robinson was tried, and if so, whether the actions of the jurors at his trial effected an acquittal. Before reaching those issues, we would need to decide if the state courts that rejected his claim independently relied on interpretations of state law. If so, we cannot review the determinations of state law and would need to dismiss.

We start, though, with determining whether Robinson's claims are cognizable in a suit seeking a writ of *habeas corpus.* Traditionally, the writ "simply provided a means of contesting the lawfulness of restraint and securing release." *Department of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020). Indeed,

> the Court has focused on the need to ensure that state prisoners use only *habeas corpus* (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.

*Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original).

Justice Scalia, concurring in *Dotson*, summarized the kinds of relief that affect custody:

> It is one thing to say that permissible *habeas* relief, as our cases interpret the statute, includes ordering a "quantum change in the level of custody," *Graham v. Broglin*, 922 F.2d 379, 381 (C.A.7 1991) (Posner, J.), such as release from incarceration to parole. It is quite another to say that the *habeas* statute authorizes federal courts to order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody.

*Id.* at 86 (Scalia, J., concurring).

6

No. 22-30310

It is true that a writ may provide for only a *conditional* release. For example, when a "[p]etitioner's death sentence was tainted by Eighth Amendment error," the Court held that the petition for a writ of *habeas corpus* should be granted, *i.e.*, the inmate should be released from custody, "unless the State of Arizona within a reasonable period of time either corrects the constitutional error in petitioner's death sentence or vacates the sentence and imposes a lesser sentence consistent with law." *Richmond v. Lewis*, 506 U.S. 40, 52 (1992). Such relief directly affects custody unless the condition imposed is satisfied.

At least one treatise categorizes a form of relief available with *habeas* as "essentially in the nature of a declaratory judgment." RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 33.4 (7th ed.). What is clear from the discussion, though, is that the authors were describing precedents that do not immediately end custody but still affect it. One example concerned a prisoner who was serving consecutive sentences and claimed that the earlier one, already fully served, arose from an unconstitutional conviction. *Id.* at n.5 (citing *Garlotte v. Fordice*, 515 U.S. 39, 41 (1995)). The Court began by emphasizing what we have been stating here: "The federal *habeas* statute authorizes United States district courts to entertain petitions for *habeas* relief from state-court judgments only when the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Garlotte*, 515 U.S. at 43–44 (quoting 28 U.S.C. § 2254(a)). The Court then concluded that the claim was cognizable because a holding that the already-served sentence was invalid would advance the date at which Garlotte could be released. *Id.* at 46.

Another reason for the limits on relief in a *habeas* proceeding is that a suit to have someone released from custody needs to be brought against the keeper of the keys to the detainee's cell. Robinson brought suit against Sheriff Lopinto, in whose jail he sits. Were we to consider blocking re-prosecution

on some of the charges against Robinson, the needed defendant would instead be the district attorney or some similar official.

Applying these principles to this case, the most significant fact is that only nine jurors favored acquitting Robinson on Count 4. In a *habeas* case, we cannot "order relief that neither terminates custody, accelerates the future date of release from custody, nor reduces the level of custody." *Dotson*, 544 U.S. at 86 (Scalia, J., concurring). The following was the one example given of a change to the "level of custody": "release from incarceration to parole." *Id.* (citing *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)). Robinson is validly in custody at least on the basis that he can be retried on Count 4. The relief Robinson wants derives from his argument that a proper interpretation of federal law means he was acquitted on four of five counts. Even if we were to agree, we could not terminate custody, accelerate its conclusion, or alter the level or, perhaps more precisely, the category of his custody.

The parties did not brief the propriety of granting relief if Robinson was still subject to trial on one count. Indeed, the factual claim Robinson made in his pleadings in district court was that at his trial, jurors by "a super-majority favor[ed] acquittal on all counts." Thus, this *habeas* case began as one in which release from custody might have been the remedy. Once it was clear that one charge was unaffected by Robinson's arguments, we directed each party to file a supplemental letter brief analyzing whether there is any relief relevant to custody that could be granted in this case.

Sheriff Lopinto's supplemental letter stated that Robinson "will indisputably still be subject to retrial and custody for Count Four even if this Court finds an effective acquittal on the other counts." The letter acknowledged that bail might be lowered if four counts were eliminated. Robinson argues he is entitled to "immediate release" from the four counts, apparently

meaning release from the legal effect of those counts. The letter then argued that even if our ruling did not lead to Robinson's release from physical custody, he still was entitled to removal of those four charges from the collection of legal restraints on him:

> Even if Mr. Robinson were denied bail on the other charge (or lawfully convicted of the offense), the jeopardy-barred charges would constitute an unlawful restraint on Mr. Robinson's liberty (and, hence, Mr. Robinson would be "in custody in violation of the Constitution" under the habeas statute).

The most relevant authority Robinson cites for that proposition is readily distinguishable. There, a prisoner had been serving consecutive sentences and challenged the sentence he was to serve in the future. *Peyton v. Rowe*, 391 U.S. 54, 55 (1968). Success in his argument would not entitle the *habeas* applicant to immediate release, but he was not required to wait until he began serving the potentially invalid sentence to bring his claim. *Id.* at 64. The Court concluded "that a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of" the federal *habeas* statutes. *Id.* at 67. If we were to agree with Robinson's claims, though, there would not be a delayed effect on custody. A closer fit with *Rowe* would be if the State were planning to try Robinson *seriatim* on each count, an approach that would provide separate periods of future custody on each of the four challenged counts. There is no suggestion of that in this record. Any one of the counts currently pending against Robinson is sufficient to allow his detention until trial, and that single detention is the only one relevant in this case.

Another difficulty with this argument is that Robinson had not previously contended that some effect on bail was relevant. His arguments had basically been this: (1) nonunanimous acquittals were not invalidated by *Ramos*; (2) Robinson's "mistrial" actually was an acquittal; (3) none of the pretrial and post-mistrial denials of relief by the state courts had relied on state

No. 22-30310

law; and (4) this court could grant relief, as both the initial and reply brief state, "pursuant to the double jeopardy protections" of the Constitution.

Had Robinson argued and presented evidence in district court that his custody would be affected by a favorable ruling because he could afford the bail set for Count 4 alone, that would get closer to making this case one about custody. That is not the case before us on this appeal.

We leave this case in the form it was presented. Once it became clear that the arguments about acquittals did not apply to all counts, this suit has not been about a release from or reduction in length or level of custody. The question has been whether nonunanimous verdicts of acquittal prevented Robinson's retrial on four counts. He has not been requesting release from detention as he awaits trial on only one charge. This Section 2241 *habeas* proceeding therefore must be dismissed.

We do not evaluate the district court's finding that when the state courts held Robinson had not been acquitted, those courts had relied at least in part on state law. Our decision is based only on the unavailability of any relief appropriate in a *habeas* proceeding for Robinson's claims. That is the only issue we consider, and, solely for that reason, we hold that there was no error in the district court's denial of habeas relief.

Though we cannot rule on the merits of Robinson's arguments, nothing in this opinion should be interpreted as preventing Robinson from presenting similar arguments in the future as appropriate.

AFFIRMED.